OPINION OF THE COURT
Frederic S. Berman, J.
Under what circumstances does possession of a replica of a 19th century antique, muzzle-loading pistol constitute a violation of the provisions of section 265.02 of the Penal Law?
This novel and intriguing question was raised by the defendant, who stands accused of the felony offense of criminal possession of a weapon in the third degree, in a motion brought to dismiss the indictment under CPL 210.20.
The facts are substantially uncontroverted. On May 11, 1981, on a subway platform at Broadway and 96th Street in Manhattan, a transit police officer observed that the defendant had a weapon in his coat pocket. The gun was a replica of an old New Orleans Ace pistol, used by Louisiana gamblers in the early part of the 19th century.
In the barrel of the weapon was one ball of ammunition with a rag obstructing its discharge. Subsequent to his arrest, the defendant was searched and a bag of black gunpowder and additional balls of ammunition were found in the defendant’s sock.
*834 In order to discharge this weapon, however, first the rag and ball would have to be removed from the barrel and a quantity of the black gunpowder introduced into the chamber; then the ball of ammunition would have to be front loaded through the barrel and the percussion cap put in place. That accomplished, the weapon was positioned for firing.
A ballistics test conducted by the New York City Police Department indicated that both the gun and the ammunition were operable.
In his instant motion, the defendant, in essence, makes two assertions in support of his application to dismiss the indictment: (a) that this antique gun was not a “loaded weapon” within the meaning of the statutes (Penal Law, § 265.00, subd 3; § 265.00, subd 15; § 265.02, subd [4]), and (b) even if the statutes are satisfied, the intent and spirit of the Legislature require dismissal.
A proper analysis of this issue requires careful study of various statutory definitions and an examination of legislative intent.
A person is guilty of criminal possession of a weapon in the third degree when “[h]e possesses any loaded firearm” (Penal Law, § 265.02, subd [4]). A firearm “means any pistol * * * except an antique firearm.” (Penal Law, § 265.00, subd 3.)
The term “[a]ntique firearm” is defined in subdivision 14 of section 265.00 of the Penal Law as follows: “Any unloaded muzzle loading pistol or revolver with a matchlock, flintlock, percussion cap, or similar type of ignition system, or a pistol or revolver which uses fixed cartridges which are no longer available in the ordinary channels of commercial trade.” (Emphasis supplied.)
The term “[Loaded firearm” is defined in subdivision 15 of section 265.00 of the Penal Law as follows: “any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm.”
Without question, had the pistol found on defendant in this case been unloaded it would qualify as an “[a]ntique *835 firearm”, thus excepting the defendant from culpability under article 265 of the Penal Law.
Under such circumstances the defendant would in no way have run afoul of any law. Section 400.00 (subd 2, par [f]) of the Penal Law, e.g., exempts true antique muzzle-loading pistols and replicas thereof from licensing requirements and subdivision (1) of section 265.01 of the Penal Law, which makes simple possession of a firearm (even if unloaded) a crime, would not be offended either. (See, further, Administrative Code of City of New York, § 436-5.0.)
The purpose of subdivision 3 of section 265.00 of the Penal Law, which excepts antique firearms from the application of the penal statutes (L 1974, ch 986), was set forth in a memorandum from the Assembly Codes Committee as follows (NY Legis Ann, 1974, p 67):
“The purpose of this bill is to omit from the definition of firearms any unloaded muzzle loading pistol or revolver with a matchlock, flintlock, percussion cap, or similar type of ignition system * * * If such antique firearms are omitted from the definition, then hobbyists would be permitted to collect * * * trade, buy and sell these antique firearms without being subject to the requirements of licensing.
“The collecting of antique firearms is a hobby engaged in by thousands of residents”. (Emphasis supplied.)
Clearly, the Legislature did not see fit to except antique firearms entirely from the operation of the statutes. Rather it limited the exception to unloaded antique firearms. The crucial distinction, therefore, between the permissible act (possession of an antique firearm) and the criminal one, is founded upon whether or not the weapon is loaded.
In order to attain the threshold level of criminality, the weapon must be operable and the ammunition “live”. (People v Daniels, 77 AD2d 745; People v Simmons, 55 AD2d 879; People v Samarati, 53 AD2d 999; People v Fwilo, 47 AD2d 727; People v Donaldson, 49 AD2d 1004; People v Garcia, 46 AD2d 611.)
Under the peculiar facts of this case, a portion of the ammunition was in the barrel (a lead ball), part was in the *836 defendant’s sock (the gunpowder), and the balance in the gun itself (a firing cap). Loading the weapon properly in order for it to be discharged would, undoubtedly, take more time than for conventional weapons, since both the rag obstructing the discharge of the ball and the ball itself would have to be removed before insertion of the gunpowder.
Defendant’s argument that this complexity of loading the weapon excepts it from being a violation of the statute is not persuasive. A gun which requires a laborious procedure to be fired is as much a loaded weapon under the law as one which is loaded in an instant, provided both entities which comprise the deadly whole, the gun and the ammunition, are on the person of the defendant and are operable.
Nor does the statute set forth the manner in which the ammunition and the weapon must be “possessed”. To constitute criminal possession of a weapon in the third degree, it is sufficient that they are simultaneously possessed by the defendant.
Although there are no reported cases specifically dealing with this issue, an Attorney-General’s opinion (1977 Atty Gen [Inf Opns] 300, 302) substantiates this view:
“the replica muzzle loading percussion pistols * * * would fall within the statutory definition. We therefore conclude that a retail store may sell these unloaded pistols, and adult citizens of the State may purchase and possess these unloaded pistols without a license.
“If the retail store also sells ammunition which may be used to discharge these pistols, under Penal Law, §§ 265.00 (6) and (15) the pistols would lose their ‘unloaded’ quality and the retail store would be violating Penal Law, § 265.10 (4) unless it possessed a valid dealer in firearms license. Likewise, if the purchaser of such a pistol also has in his possession ammunition which may be used to discharge the pistol, the pistol would lose its ‘unloaded’ quality and would no longer meet the statutory definition of an ‘antique firearm.’ Such a situation would be a violation of Penal Law, §§ 265.01 (1) and 265.02 (4) unless the purchaser had a license.”
*837 Defendant argues that since the Legislature had excepted possession of an antique firearm from subdivision (1) of section 265.01 of the Penal Law (which makes simple possession of an unloaded gun a crime), it therefore intended or should have intended, in the interest of uniformity, that an antique firearm, whether loaded or unloaded, cannot constitute a “firearm”.
Such arguments are not persuasive. While government, as a concession to hobbyists, may not wish to make simple possession of antique guns or their replicas a manifestation of criminal activity, it is neither inconsistent nor inappropriate for society to view the possession of a loaded antique firearm as a potential deadly threat since such a weapon could be as lethal as the traditional weapon in the hands of one bent upon criminal mischief.
Accordingly, and for all of the foregoing, defendant’s motion to dismiss the indictment is denied.